UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>THE TRUSTEES OF BOSTON COLLEGE,<br><br>    Defendant. | * <br> * <br> * <br> * <br> * <br> *   Civil Action No. 23-cv-12737-ADB <br> * <br> * <br> * <br> * <br> * |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

    Plaintiff John Doe ("Doe") filed a sealed complaint alleging that the Trustees of Boston College ("BC") breached a contract and the implied covenant of good faith and fair dealing by purportedly discussing Doe's disciplinary record with a medical school to which he applied. [ECF No. 1 ¶¶ 1, 139–153 ("Compl." or "Complaint")].  Now pending before the Court are Doe's motion to proceed under a pseudonym, [ECF No. 9], BC's cross-motion to proceed with pseudonyms for nonparty BC employees, [ECF No. 11], and BC's motion to strike portions of the Complaint, [ECF No. 12].  For the reasons set forth below, all of the motions are GRANTED.

I.   **BACKGROUND**[1]

    A.   **Factual Background**

Doe is a former a student at Boston College.  See [Compl. ¶¶ 6, 29, 90].  While there, he alleges that he "experienced difficulty integrating with the general student population" due to certain medical conditions.  [Id. ¶¶ 8–10].  Apparently as a result of these difficulties, he was allegedly bullied by other students.  [Id. ¶ 12].  In addition, Doe alleges that he was mistreated in various ways by BC and certain of its employees.  [Id. at ¶¶ 18–90].

As a result of the bullying and mistreatment, formal complaints were raised both by Doe and against Doe.  For example, Doe filed a police report after a bullying incident.  [Compl. ¶¶ 15–16].  He also filed a Title IX complaint against a BC employee after alleged unwanted sexual contact.  [Id. ¶ 79–82].  On the other hand, a BC employee filed a police report against Doe alleging harassment and stalking.  [Id. ¶ 55].  Further, BC issued a "University Stay Away" order directing Doe to stay away from a professor with whom he had had issues.  [Id. ¶ 63].

After the stay away order issued, BC alleged that Doe violated it.  [Compl. ¶ 86].  It ordered him to keep away from campus and raised disciplinary charges against him.  [Id. ¶¶ 63–90].  Despite the charges, Doe was able to graduate as long as he completed his coursework off campus.  [Id. ¶ 90].

Thereafter, BC and Doe sought to resolve the various charges by entering a settlement agreement (the "Settlement"), [Compl. ¶ 92], under which Doe agreed to withdraw his complaints, [id. ¶ 93], and BC agreed to the following:

---

[1] Due to the sensitive nature of the allegations and the context of these motions, the Court summarizes the facts with limited detail to avoid inadvertently identifying Doe or any other third parties discussed in the Complaint.

> [1] [BC would] dismiss all pending disciplinary charges against Doe and to expunge the charges from his student record, including any related records from its database[,]
>
> [2] Doe's disciplinary record would only reflect [an] incident described as Doe's failure to comply with a university directive[,] and
>
> [3] [BC would] not . . . disclose the allegations related to the dismissed and expunged charges. If any third party requested information concerning Doe's conduct record, BC agreed that it would only say that Doe "was found responsible for failure to comply with a university directive, and completed one semester of university probation."

[Id. ¶¶ 94–96].

After Doe graduated, he applied to medical schools. [Compl. ¶ 97]. Doe alleges that when he was not admitted to a particular school, [id. ¶¶ 117, 138], he learned that it was the result of "a red flag on the BC portion" of his application, [id. ¶ 110]. Among other things, the medical school admissions team was allegedly told that the incident described as Doe's "failure to comply with a university directive" was "the result of multiple instances of Doe breaking the rules despite multiple warnings," including relating to the violation of the stay away order. [Id. ¶¶ 96, 111–112]. The admissions team was also allegedly told that "Doe's disciplinary history at BC [was] . . . more significant than previously described," [id. ¶ 115], and that he was suspended from BC, [id. ¶ 116]. Moreover, they were purportedly told by someone at BC that "there was legal action between Doe and BC." [Id. ¶ 126]. Finally, when the medical school reached out to BC for more information, BC responded by email and "provided the agreed upon language, [and] . . . also stated that it was unable to provide any further information regarding the incident," which Doe alleges "effectively informed [the medical school] of the existence of the contract." [Id. ¶¶ 133–135].

Doe now brings a claim for breach of contract, alleging that "BC breached the [Settlement] by disclosing information about Doe's BC student disciplinary record that it agreed

3

not to provide," or alternatively by "providing the admission committee information about Doe's disciplinary record that was false and/or misleading." [Compl. ¶¶ 143–144]. Doe also claims that BC breached the implied covenant of good faith and fair dealing for largely the same reasons. [Id. ¶¶ 146–153].

### B. Procedural History

On November 22, 2023, Doe moved to proceed under pseudonym. [ECF No. 9]. BC opposed on November 30, 2023, and also cross moved to proceed with pseudonyms for nonparties. [ECF No. 11]. Doe replied on December 4, 2023, [ECF No. 14], and BC sur-replied on December 8, 2023, [ECF No. 15].

Separately, BC moved to strike portions of the Complaint on November 30, 2023. [ECF No. 12]. Doe opposed on December 4, 2023, [ECF No. 14], and BC replied on December 8, 2023, [ECF No. 15].

## II. MOTIONS TO PROCEED UNDER PSEUDONYM

"[T]here is a 'strong presumption against the use of pseudonyms in civil litigation,'" Doe v. MIT, 46 F.4th 61, 67 (1st Cir. 2022) (quoting Does 1-3 v. Mills, 39 F.4th 20, 24 (1st Cir. 2022)), but it may be appropriate in "exceptional cases," id. at 70 (quoting Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011)). That is because "[l]awsuits in federal courts frequently invade customary notions of privacy and — in the bargain — threaten parties' reputations." Id. Thus, the First Circuit has held that anonymity may be warranted in the following exemplary and exceptional cases: (1) the "would-be Doe . . . reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)," (2) "identifying the would-be Doe would harm innocent [nonparties]," (3) "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated," which "typically arises in cases

involving intimate issues such as sexual activities . . . medical concerns, or the identity of abused minors," and (4) the suit is "bound up with a prior proceeding made confidential by law." Id. at 71 (internal quotations and citations omitted). In considering these factors, "[t]he party seeking pseudonymity bears the burden of rebutting the strong presumption against it." Id. at 73.

Here, the Court finds that, at this stage, all of the MIT considerations weigh in favor of maintaining Doe's anonymity. First, revealing Doe's identity would cause at least psychological harm by unnecessarily making public his medical conditions and his allegations regarding sexual activity and abuse. [ECF No. 10 at 6]. Second, if Doe's identity were known, the identity of nonparties who are alleged to have abused Doe could be easy to determine. See [ECF No. 11 at 9]. Third, future litigants who "are victimized by unwanted sexual advances and assaults" could be chilled from brining similar suits with the knowledge that their names may become public. [ECF No. 10 at 7]. Finally, Doe's Title IX proceedings should be treated as confidential, and naming him here would remove that confidentiality. [Id. at 7–8]. Accordingly, the Court GRANTS Doe's request to proceed by pseudonym.

Regarding BC's cross-motion to allow nonparty BC employees to proceed by pseudonym, making public sensitive and unproven allegations against those nonparties could cause great harm to their wellbeing, reputations, and careers. See MIT, 46 F.4th at 71. Moreover, Doe does "not oppose BC's request," [ECF No. 14 at 4]. Given the agreement of the parties, the circumstances of this case and the unfairness of allowing Doe to proceed anonymously, but not the third parties, the cross-motion for nonparty BC employees to proceed

by pseudonym is GRANTED.  Cf. Patrick Collins, Inc. v. Does 1-38, 941 F. Supp. 2d 153,160–61 (D. Mass. 2013) (allowing Defendants to proceed by pseudonym in an exceptional case).[2]

### III.     MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that courts "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Although motions to strike are generally disfavored," Zurich Am. Ins. Co. v. Watts Regulator Co., 796 F. Supp. 2d 240, 246 (D. Mass. 2011), and "rarely granted absent a showing of prejudice to the moving party," Autila v. Mass. Bay Trans. Auth., 342 F.R.D. 23, 32 (D. Mass. 2022), "the Court possesses considerable discretion in resolving such a motion."  Zurich, 796 F. Supp. 2d at 246.

Allegations may be struck if they "are immaterial because they have no essential or important relationship to the claim for relief or the defenses being pleaded and are impertinent because they do not pertain, and are not necessary, to the issues in question."  McLeod v. Fessenden Sch., 626 F. Supp. 3d 220, 222 (D. Mass. 2022) (internal quotations and citation omitted).  Moreover, "the presence of immaterial allegations in a complaint can rise to the level of prejudice when 'the matter complained of has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party.'"  Leader v. Harvard Univ. Bd. of Overseers, No. 16-cv-10254, 2017 WL 1064160, at *6 (D. Mass. Mar. 17, 2017) (quoting Anderson v. Bd. of Educ., 169 F. Supp. 2d 864, 868 (N.D. Ill. 2001)).

---

[2] Doe states that he "has reservations as to whether shielding the identities of the BC employees is permitted by any legal framework elucidated by the First Circuit.  In its papers, BC has failed to identify the proper standard for the Court to apply to such a request." [ECF No. 14 at 4–5].  Even if MIT were not the correct standard, here, where Doe assents to the request, there is no prejudice to Doe and the Court sees no reason why the request should not be granted.  In any event, as discussed below, the allegations naming the nonparties will be struck from the Complaint.  See supra.

Here, BC argues that the Court should strike paragraphs 1 and 8–90 as immaterial to the claims, and paragraphs 1, 19-21, 33-37, 47-57, 65-83, and 86 as scandalous and creating unnecessary "clutter." [ECF No. 13 at 4–6]. In response, Doe argues that the allegations relating to BC employees are necessary to establish that the parties executed a valid agreement and that BC breached the agreement. [ECF No. 14 at 3]. In particular, he claims "that BC, through its employees, were motivated to violate the Agreement because of the personal nature of the accusations Doe made against certain members of the BC community." [Id. at 4]. He further argues that the allegations are not scandalous because they do "not go out of [the] way to impugn the character of any BC employee. Rather [they] allege[] facts that led the Parties to enter into the Agreement that serves as the basis for [the] claims." [Id.]. Finally, he avers that there is no prejudice because BC is ready and willing to deny the allegations and BC's employees will not be subject to reprisals. [Id.].

Paragraph 1 of the Complaint gives a general overview of the case, stating that "[t]his is a breach of contract action" based on BC's alleged violation of the Settlement that resolved Doe's claims regarding "inappropriate touching, sexual assault, and various other instances of harassing behavior and retaliatory conduct, as well as complaints related to inadequate accommodations to address his medical condition." [Compl. ¶ 1]. It also references BC's claims that Doe violated the stay away order. [Id.]. Paragraphs 8–90 provide the details of Doe's claims against the school and its employees, as well as his alleged violation of the stay away order. [Id. ¶¶ 8–90]. Although the Court finds that Doe should be entitled to provide some background as to how the Settlement came about, many of the facts in these paragraphs are not essential or necessary to prove the alleged claims, especially those facts that could lead to the identification of nonparties. The Court therefore finds that much of the information included in the challenged paragraphs

would prejudice BC by forcing it to defend its students and/or employees against scandalous allegations that are unrelated to the merits of the alleged breach of the Settlement. Accordingly, the Court strikes the following from the Complaint: paragraph 13 insofar as it includes the quoted language of a nonparty, and paragraphs 18–21, 23–57, 59, 61 (only the second sentence), 63, 65–69, 71–75, 77–79, 81–86 insofar as they refer to the name or gender of nonparties, the subject matter of the classes they taught (if any), and/or their specific role at BC and/or area of expertise. In addition, all future filings shall refrain from including any similar details about nonparties.

## IV.   CONCLUSION

Accordingly, Doe's motion to proceed under pseudonym, [ECF No. 9], BC's cross-motion to proceed with pseudonyms for nonparty BC employees, [ECF No. 11], and BC's motion to strike portions of the complaint, [ECF No. 12], are <u>GRANTED</u>.[3] By March 22, 2024, Plaintiff shall refile a version of its complaint, under seal, that complies with this Order.[4]

**SO ORDERED.**

February 27, 2024                                    /s/ *Allison D. Burroughs*
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE

---

[3] There may come a time when it is appropriate to identify Doe and others involved in this litigation, but that time is not now before allegations on either side have been substantiated or tested through the adversarial process.

[4] The Court notes that failure to comply with the parameters of this Order throughout this case will likely lead to reconsideration of the parties' rights to maintain anonymity. See MIT, 46 F.4th at 73 ("an order granting pseudonymity should be periodically reevaluated if and when circumstances change").