# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

JOHN DOE,
           *Plaintiff*,

    v.

THE TRUSTEES OF BOSTON COLLEGE,

    *Defendant*.

**Civil Action No. 23-12737-ADB**

## ANSWER OF DEFENDANT TRUSTEES OF BOSTON COLLEGE TO PLAINTIFF'S COMPLAINT AND CLAIM FOR JURY TRIAL

Defendant Trustees of Boston College ("BC") hereby answers the correspondingly numbered paragraphs of Plaintiff's Complaint and Claim for Jury Trial as follows:

## INTRODUCTION

1.    Answering the first sentence, BC admits the Complaint alleges a breach of contract, but BC denies any breach of contract. The second sentence is admitted; further answering, BC denies all of Doe's grievances. Answering the third sentence, BC admits that BC accused Doe of violating university orders and policies, but denies doing so "in response" to Doe's filing of grievances, all of which BC denies. Answering the fourth sentence, BC admits that Doe and BC entered into an agreement, which speaks for itself. Answering the fifth sentence, BC admits only that Doe applied to medical schools, and further states that Doe did so with substantial and ongoing assistance and advice from personnel at BC; the remaining allegations in the fifth sentence are denied. The sixth sentence is denied.

## PARTIES

2.      Upon information and belief, admitted.

3.      Admitted.

## JURISDICTION AND VENUE

4.      No answer is required to the legal conclusion in this paragraph.

5.      No answer is required to the legal conclusion in this paragraph.

## FACTS

6.      Admitted.

7.      Upon information and belief, admitted.

8.      Answering paragraph 8, BC states that Doe achieved success in some courses, but not in others; the remaining allegations in paragraph 8 are admitted.

9.      Denied.

10.      Admitted.

11.      Denied.

12.      Denied.

13.      BC has insufficient knowledge or information to respond to the allegation concerning Doe's motivation. Further answering, Doe did not make his report on alleged conduct by Employee A until after Doe had harassed Employee B and was directed to stay away from Employee B. Further answering, BC denies any improper conduct by Employee A.

14.      Denied. Further answering, in early 2019, Doe emailed Employee A, demanding to know why Employee B was assigned to teach a class previously taught by Employee A, who was leaving BC for medical reasons.

15.     The first sentence is admitted. Answering the second sentence, BC admits that Doe did well in the class academically.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     Answering paragraph 19, BC admits only that Employee B initially agreed to write a letter of recommendation, be a mentor, and assist in finding Doe a position. Further answering, BC states that after many further conversations over the remainder of 2018, and after Doe had engaged in numerous inappropriate behaviors toward Employee B, Employee B declined to write a letter of recommendation and declined to continue to mentor Doe.

20.     Answering paragraph 20, BC states that in the fall of 2018, Doe sought excessive and unnecessary meetings with Employee B, made Employee B uncomfortable by talking about personal issues, emailed Employee B excessively (seven times in one day, and occasionally at night), and engaged in other odd or inappropriate behaviors.

21.     Answering the first sentence, BC states that Doe voluntarily mentioned and talked about personal issues in his life, and that Employee B initially attempted to help Doe. Answering the second sentence, BC states that Doe persisted in seeking regular meetings. The remaining allegations in this paragraph are denied.

22.     Admitted.

23.     Answering the first sentence in paragraph 23, BC states that Employee B accompanied Doe to a meeting at University Counseling Services ("UCS"). The remaining allegations in paragraph 23 are denied.

24.     The first sentence is admitted. Insufficient knowledge or information to respond to the second sentence.

25.     Insufficient knowledge or information to respond to paragraph 25.

26.     Admitted; further answering, BC denies any assault occurred.

27.     Denied. Further answering, BC states that beginning in the Fall of 2018, Employee B informed Doe on several occasions that his conduct and comments to Employee B were inappropriate and crossed Employee B's personal and professional boundaries. Further answering, Employee B stated that Employee B was not a "friend" of Doe's. BC denies any abuse occurred.

28.     Denied.

29.     Answering paragraph 29, BC states that in late January 2019, Employee B informed Doe that he must stop communicating with Employee B.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.      Answering paragraph 34, BC states that Employee B informed Doe that Employee B could not write a letter of recommendation for Doe for medical school.

35.     Denied.

36.     Answering paragraph 36, BC states that Employee B informed Doe that Employee B was too busy with teaching duties and other students to continue to meet regularly with Doe. The remaining allegations are denied.

37.     Answering paragraph 37, BC admits that Doe was upset that Employee B would no longer be Doe's mentor and that Doe emailed Employee A, demanding to know why Employee B had been assigned to additional teaching duties. Further answering, BC admits that Doe wrote an email concerning Employee B's teaching duties, but BC states that the email speaks for itself.

38.     The first sentence is admitted. Answering the second sentence, BC states that Employee C asked Doe to meet with Employee C. The third sentence is denied. The remaining allegations are denied.

39.     Denied.

40.     Denied. Further answering, BC states that Employee C informed Doe that Doe had made Employee B uncomfortable and that Doe should not contact Employee B for the remainder of the semester.

41.     Admitted, with the exception that Employee C did not say, in words or substance, "because of it."

42.     Answering paragraph 42, BC states that Employee C informed Doe, in substance, that Employee B was not his friend, would not be his mentor, would not write letters for Doe, and that Doe's fixation with Employee B must end. Employee C also informed Doe that if Doe's contact with Employee B did not end, the BC Police Department could be notified.

43.     Answering paragraph 43, BC states that Employee C informed Doe, in substance, that if Doe refrained from contacting Employee B for the remainder of the semester, it was possible Employee B might again be Doe's mentor, but that Employee C could not make any promises.

44.     Answering paragraph 44, BC states that during the meeting, Doe alleged sexual abuse by Employee A, which, when questioned, Doe identified as Employee A putting his hand on Doe's shoulder. Employee C responded that the description did not sound like sexual abuse. Further answering, BC states that Employee C informed Doe that he should not interact with Employee B for the remainder of the semester. The remaining allegations in this paragraph are denied.

45.     Admitted.

46.     Denied.

47.     Denied. Answering paragraph 47, BC states that ultimately an investigation concluded that on at least 29 occasions, Doe sent harassing emails to Employee B, used fake email addresses designed to conceal his identity, that Doe's use of a computer was traced forensically to an IP address of a computer that Doe admitted he had used, and that Doe approached and attempted to approach Employee B. Further answering, BC states that BC did not pursue criminal charges against Doe, but the BC Police Department informed Employee B that Employee B could pursue criminal charges if Employee B wished to do so.

48.     Answering paragraph 48, BC admits that Doe informed Employee B in a note that he was going to attempt suicide; the remaining allegations in this paragraph are denied. Further answering, BC denies that any BC employee caused Doe's suicidal ideation.

49.     Admitted.

50.     Answering paragraph 50, BC states that Doe retrieved the suicide note shortly after placing the suicide note under Employee B's office door, and that Doe went to UCS.

51.     Admitted.

52.     Admitted.

53.     Answering paragraph 53, BC states that the BC Student Code of Conduct and stay away order speak for themselves. Further answering, BC states that it had the authority to inform Doe that he must stay away from any employee whom Doe, among other misconduct, had harassed, stalked, and annoyed with unwanted and repetitive communications.

54.     Answering paragraph 54, BC states that Employee D had several conversations with Doe's mother, and that in one of the conversations, Employee D said, in substance, that it was best for Doe to be in the hospital when he received the stay away order.

55.     Admitted that Doe made such allegations against Employee A; further answering, BC denies any abuse by Employee A or any other BC employee.

56.     Admitted.

57.     Answering paragraph 57, BC has insufficient knowledge or information to respond to the allegation that Doe was uncomfortable; further answering, BC admits that during a conversation between Employee D and Doe, Doe stated in substance that he did not wish to meet with Employee D in person.

58.     Denied.

59.     Denied.

60.     Admitted.

61.     Denied.

62.     Denied.

63.     Denied; further answering, BC states that Employee D decided that Employee D should not meet with Doe unless another person was also present.

64.     Answering paragraph 64, BC states that Employee D spoke with Doe's mother, explained to Employee B that the conduct hearing could result in Doe's being found

responsible for violating the no-contact order, and explained the difference between disciplinary probation and University probation. Further answering, BC denies that Employee D said that disciplinary probation was a "slap on the wrist."

65.    Denied.

66.    Answering paragraph 66, BC states that on or about May 3, 2019, Employee D met with Doe because Doe had repeatedly violated the stay away order.

67.    Answering paragraph 67, BC states that Employee D suggested Employee D and Doe meet in Employee D's office, instead of discussing Doe's disciplinary violation in a public setting; further answering, Doe objected, and they met outside near the Merkert building.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied. Further answering, BC states that immediately after Employee D learned that Doe had made a false claim of sexual abuse against Employee D, Employee D informed Employee D's supervisor and the University's harassment counsellor of the claim, and Employee D informed Doe that Doe should report the claim too. Further answering, BC states that thereafter, Doe reported the false claim himself.

72.    Answering paragraph 72, BC states that after Doe violated the stay away order by repeatedly contacting and attempting to contact Employee B, BC accused Doe of violating the stay away order. Further answering, Doe's walking by Employee B's off-campus house violated the stay away order.

73.    Denied.

74.     Answering paragraph 74, BC states that it ordered Doe to remain off campus. Further answering, BC denied that it made, or ever made, any specious accusations.

75.     Denied.

76.     Answering paragraph 76, BC states that on July 9, 2019, BC emailed Doe a notice of disciplinary charges against Doe, based on Doe's violations of the stay away order since March 31, 2019. The second sentence is admitted. Further answering, on December 20, 2019, following further investigation, BC sent Doe an update to the July 9, 2019, notice letter. The update recited 29 instances of Doe's anonymous emails to Employee B, 2 instances of Doe's approaching or attempting to approach Employee B, and one instance of Doe's attempting to communicate with Employee B through a third party.

77.     Answering paragraph 77, BC admits that the hearing was not held and admits that Doe disputed the charges.


## SETTLEMENT AGREEMENT

78.     Admitted.

79.     Admitted.

80.     Answering paragraph 80, BC states that the Agreement is in writing and speaks for itself.

81.     Answering paragraph 81, BC states that the Agreement is in writing and speaks for itself.

82.     Answering paragraph 82, BC states that the Agreement is in writing and speaks for itself.

83.     Answering paragraph 83, BC states that the Agreement is in writing and speaks for itself.

**FIRST ADMISSION CYCLE**

84.    Admitted.

85.    Insufficient knowledge or information.

86.    Insufficient knowledge or information as to communications between third parties.

87.    Insufficient knowledge or information as to communications between third parties.

88.    Insufficient knowledge or information as to communications between third parties.

89.    Insufficient knowledge or information as to communications between third parties.

90.    Insufficient knowledge or information as to communications between third parties.

91.    Insufficient knowledge or information as to communications between third parties.

92.    Insufficient knowledge or information as to communications between third parties.

93.    Admitted that Doe applied; further answering, BC has insufficient knowledge or information as to the interview identified in paragraph 93.

94.    Insufficient knowledge or information as to Doe's surprise at the rejection.

95.    Insufficient knowledge or information as to Medical School 1's practices.

96.    Insufficient knowledge or information as to communications between third parties.

97.    Insufficient knowledge or information as to communications between third parties.

98.    Insufficient knowledge or information as to communications between third parties.

99.    Insufficient knowledge or information as to communications between third parties.

100.    Answering paragraph 100, BC states that no employee of BC made any statements to Medical School 1's admissions committee, and BC states that BC did not violate the settlement agreement. Further answering, to the extent that the admissions committee was informed by someone other than BC that Doe's conduct violation resulted from Doe's multiple violations of BC's rules, such information was correct.

101.    Insufficient knowledge or information as to communications between third parties.

102.    Insufficient knowledge or information as to communications between third parties.

103.    Insufficient knowledge or information as to communications between third parties. Further answering, BC denies that it provided any such information to Medical School 1's admissions committee.

104.    Denied. Further answering, Doe's medical school profile was deficient in a number of respects. In addition, Doe ignored advice from BC that if and when he was interviewed by medical school admissions committees, he would be asked about his disciplinary

record, and that rather than avoid the question or, worse, describe it inaccurately, he should tell the truth, "own up" to what happened, and tell the interviewers what he had learned from the incident. BC later learned from a member of Medical School 1's admissions committee that when she asked Doe in an interview what had happened that gave rise to discipline, Doe fabricated a story in an effort to minimize his conduct, and the admissions committee member believed that Doe's account made no sense.

105.    Answering paragraph 105, BC admits that Doe sought to determine whether anyone from BC had violated the settlement agreement, and was informed that no one at BC had violated the settlement agreement. The remaining allegations in paragraph 105 are denied.

106.    Admitted.

## SECOND ADMISSION CYCLE

107.    Upon information and belief, admitted.

108.    Insufficient knowledge or information to respond to paragraph 108. Further answering, BC denies giving any false information to admissions committees.

109.    Upon information and belief, admitted.

110.    Insufficient knowledge or information to respond to paragraph 110.

111.    Admitted. Further answering, following discussion between BC employees and Doe, Doe requested BC's pre-health committee to send a letter to medical school admissions committees, and BC did so, as Doe requested.

112.    Denied.

113.    Denied.

114.    Admitted.

115.    Admitted.

116.    Denied. Further answering, the Agreement imposed no restriction on what Doe should say in response to questions from medical schools regarding Doe's disciplinary history at BC, and BC's employees had advised Doe how he should respond if asked about his disciplinary history: to tell the truth, "own up" to what had happened, and tell the interviewers what he had learned from his conduct and the discipline.

117.    Answering paragraph 117, BC states that a member of Medical School 1's admissions committee called BC, seeking information about Doe's disciplinary record at BC because, as she later explained in an email to BC, she was "confused" by Doe's "explanation" of the incident leading to his being placed on probation. The admissions committee member was asked by BC to put her request in writing, and she did so.

118.    Admitted.

119.    Admitted.

120.    Answering paragraph 120, BC states that it responded appropriately and in accordance with the Agreement to the member of Medical School 1's admissions committee, who had raised questions about Doe's disciplinary history that BC was unable to answer and did not answer.

121.    Denied. Further answering, notwithstanding Doe's having been advised on multiple occasions that he should respond truthfully and candidly to medical schools that inquired about his disciplinary history, Doe instead chose to make misrepresentations to Medical School 1's admissions committee. Further answering, the Agreement was silent as to the issue of how Doe should respond to questions about his disciplinary history at BC.

122.    Answering paragraph 122, BC states that it was under no obligation to inform Doe of the inquiry from Medical School 1, and did not do so.

123.   Upon information and belief, admitted.

## COUNT I

### (Breach of Contract)

124.   Boston College incorporates by reference Paragraphs 1-123 of this Answer.

125.   Paragraph 125 contains a legal conclusion to which no response is necessary.

126.   Paragraph 126 contains a legal conclusion to which no response is necessary.

127.   Denied.

128.   Denied.

129.   Denied.

130.   Denied.

## COUNT II

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

131.   Boston College incorporates by reference Paragraphs 1-130 of this Answer.

132.   Paragraph 132 contains a legal conclusion to which no response is necessary.

133.   Paragraph 133 contains a legal conclusion to which no response is necessary.

134.   Denied.

135.   Paragraph 135 states a legal conclusion to which no response is required.

136.   Denied.

137.   Denied.

138.   Denied.

**AFFIRMATIVE DEFENSES**

BC hereby raises the following affirmative defenses and reserves its right to bring any and all other defenses:

1.      The Complaint fails to state a claim on which relief can be granted.

2.      Doe's claims fail because he frustrated the purpose of the Agreement by making misrepresentations to Medical School 1's admissions committee concerning his disciplinary history at BC.

3.      Doe's claims fail due to estoppel.

4.      Doe's claims fail due to waiver.

5.      Doe's claims fail because he has breached the Agreement by repeating allegations against BC relating to alleged sexual misconduct that he promised in the Agreement he would not repeat.

6.      Doe's claims fail, in whole or in part, because Doe's misrepresentations to Medical School 1's admissions committee concerning his disciplinary history at BC caused the rejections of which he complains.

7.      Doe has not suffered any damages by BC's alleged conduct. Alternatively, any injury, loss, or damage alleged in the Complaint resulted in whole or in part from Doe's conduct, or from the conduct of third parties over whom BC had no control.

8.      The claims stated in the Complaint are barred, in whole or in part, to the extent Doe failed to mitigate, or reasonably attempt to mitigate, his alleged damages.

9.      To the extent any allegations in Doe's complaint arise under Title IX, Title II or Section 504 of the Rehabilitation Act, they are time barred.

WHEREFORE, Defendant Trustees of Boston College requests that following trial, the

Court enter judgment and costs for Boston College.

Respectfully submitted,

TRUSTEES OF BOSTON COLLEGE

By their attorneys,

/s/ Alan D. Rose
Alan D. Rose (BBO # 427280)
Meredith Wilson Doty (BBO # 652220)
Alexandra M. Klindienst (BBO # 708383)
Rose Law Partners LLP
One Beacon Street, 23rd Floor
Boston, MA 02108
Phone: 617-536-0040
Fax: 617-536-4400
adr@rose-law.net
lbk@rose-law.net
amk@rose-law.net

Date: May 6, 2024

16

## **CERTIFICATE OF SERVICE**

      I hereby certify that I caused this document to be filed through the ECF system and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper and/or electronic copies will be sent to those indicated as non-registered participants.

*/s/ Alan D. Rose*
Alan D. Rose

Date: May 6, 2024