UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>TRUSTEES OF BOSTON COLLEGE,<br><br>Defendant. | * * * * * * * * * * * * * | Civil Action No. 23-cv-12737-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff John Doe ("Doe") brings this action against Defendant Trustees of Boston College ("Boston College") for breach of contract and breach of the implied covenant of good faith and fair dealing. As alleged in his amended complaint, Doe entered a settlement agreement with Boston College (the "May 19 Agreement") resolving accusations that he violated Boston College's Code of Student Conduct and grievances that he filed against several Boston College employees. [ECF No. 17]. As part of the May 19 Agreement, Boston College agreed that, in response to any third-party inquiries, it would disclose only a single disciplinary finding on Doe's conduct record, using agreed upon language. [Id. ¶¶ 78–83]. Doe alleges that Boston College breached this contract and the implied covenant of good faith and fair dealing by disclosing additional information to Temple School of Medicine ("Temple SOM"), leading to the denial of his application for admission. [Id. ¶¶ 124–138].

On September 30, 2026, the Court entered a Memorandum & Order granting Boston College's motion for summary judgment with respect to Doe's breach of contract claim and denying the motion with respect to Doe's breach of the implied covenant of good faith and fair dealing claim. [ECF No. 88 (the "Order")]. Currently before the Court is Boston College's motion for partial reconsideration of the Order. [ECF No. 91]. For the reasons set forth below, the motion is **DENIED**.

## I. BACKGROUND

The Court presumes familiarity with the facts of this case and incorporates by reference the facts as stated in the Order. [ECF No. 88]. Boston College has moved for reconsideration of only the Court's analysis of the causation aspect of Doe's claim for breach of the implied covenant of good faith and fair dealing. With respect to causation, the Court previously held that there "remains a dispute of material fact as to whether the alleged breach of the implied covenant of good faith and fair dealing caused Doe to be rejected from Temple SOM," and that "it is not out of the realm of possibilities that a reasonable fact finder could find that the language in the Pre-Health Committee letter materially impacted the Temple SOM admissions committee's decision to deny Doe's application." [Order at 37–38].

## II. LEGAL STANDARD

"A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment." Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000); see also Fed. R. Civ. P. 54(b); Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008) ("[A] district court has the inherent power to reconsider its interlocutory orders, and we encourage it to do so where error is apparent."). The Supreme Court, however, has cautioned that "courts should be loathe to [reconsider orders] in the absence of extraordinary circumstances

such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)). With these principles in mind, "a court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." Davis, 89 F. Supp. 2d at 147; see Tomon v. Entergy Nuclear Operations, Inc., No. 05-cv-12539, 2011 WL 3812708, at *1 (D. Mass. Aug. 25, 2011) ("[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.") (citing United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)).

## III. DISCUSSION

In support of its motion for reconsideration, Boston College argues that the Court identified only one piece of evidence on the causation element, namely that Dr. Levin testified that he "understood 'university probation' to signify that serious or frequent conduct violations had occurred." [ECF No. 91 at 2 (citing [Order at 38])]. Boston College contends that the May 19 Agreement authorized Boston College to refer to "university probation," that this phrase reached Temple SOM independently of the Pre-Health Committee's letter, and that the record overall does not permit an inference that Dr. Levin drew his understanding from that letter. [Id.].

At the outset, the Court finds that Boston College has not identified an intervening change in the law, new previously unavailable evidence, or a clear error of law in support of its motion for reconsideration. See Davis, 89 F. Supp. 2d at 147. Rather, its issue is with the factual assessment underlying the Order. On this basis alone, the Court could deny Boston

College's motion. That said, for completeness, and the avoidance of doubt, the Court will briefly address Boston College's arguments and clarify the relevant reasoning behind the Order.

While the Court's opinion only explicitly referenced a portion of Dr. Levin's testimony in connection with the causation element of the breach of implied warranty claim, other undisputed material facts supported the Court's conclusion as well. First, as Boston College itself points out, Dr. Levin testified that his conclusion that Doe was not fit for acceptance to Temple SOM was based on his review of Doe's application file "as a whole" and Doe's interview. See [ECF No. 65 ¶ 56]. It is undisputed that the original Pre-Health Committee letter was included in Doe's first year application file, [id. ¶¶ 40, 46], and Dr. Levin testified that based on the sentence in the Pre-Health Committee letter that read "[h]e feels badly that in this case he repeatedly violated the very specific instructions from the Dean of Students and now understands his behavior was wrong," it sounded to him like "it was a serious transgression, or that there was more than just one transgression," [ECF No. 75-3 at 16].

Additionally, it is undisputed that the application screener at Temple SOM who reviewed Doe's first year application advised the Temple SOM admissions committee members to "Read letters carefully – especially 2nd paragraph on page 2" which mentioned that Doe "developed a dependency on an instructor, which resulted in him making excessive demands on her time and attention." [ECF No. 74 ¶ 110]; [ECF No. 65-7 at 2]; [ECF No. 54-5 at 2]. This fact further supports an inference that the letter was a focus of Temple SOM in reviewing Doe's application.

Further, in Doe's second application to Temple SOM, his packet contained a different Pre-Health Committee letter, but one which Doe argues still contained some improper information regarding his institutional action. [ECF No. 65 ¶ 62]. Dr. Abrams testified that as

the primary reviewer that year, she would have seen the letter when reviewing Doe's application. [ECF No. 75-1 at 4].

For these reasons, as well as those described in the Order, the Court again concludes that a reasonable fact finder could find that the language in the Pre-Health Committee letter materially affected Temple SOM's decision to deny Doe's applications.

## IV. CONCLUSION

Accordingly, Boston College's motion for reconsideration, [ECF No. 91], is **DENIED**.

**SO ORDERED.**

November 25, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE